**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| ST CHARLES HOUSING, LP | CIVIL ACTION NO. 21-3416 |
| VERSUS | JUDGE ALEXANDER C. VAN HOOK |
| ELITE CONTRACTORS, LLC, ET AL. | MAGISTRATE JUDGE HORNSBY |

# MEMORANDUM RULING

St. Charles Housing, LP ("St. Charles") filed a complaint against Elite Contractors, LLC ("Elite"), Sharpco Construction, LLC ("Sharpco"), and Ted Reeds Architecture, LLC ("Reeds") for alleged construction defects. Record Document 1. Following a joint motion of the parties, St. Charles's claims against Reeds were dismissed with prejudice. Record Document 70. St. Charles's claims against Elite were dismissed as a discovery sanction. Record Document 100. The only claims that St. Charles has left are those against Sharpco. *See* Record Documents 1, 70, 100. Before the Court is a motion for summary judgment filed by Sharpco seeking dismissal of St. Charles's remaining claims. Record Document 122. For the following reasons, Sharpco's motion for summary judgment is **GRANTED**. Record Document 122. All claims of St. Charles against Sharpco are dismissed with prejudice.

For its part, Elite filed a counterclaim against St. Charles for breach of contract or, in the alternative, unjust enrichment. Record Document 12. Elite demanded payment for work that it performed as well as damages for lost overhead, profit, and contractual interest. *Id.* at 21-22. After St. Charles's affirmative defenses were struck

as a discovery sanction, Elite also moved for summary judgment. Record Document 124. For the following reasons, Elite's motion for summary judgment is **GRANTED IN PART**. Record Document 124. Elite is entitled to judgment on its claim of unjust enrichment in the total amount of $299,649.17. But Elite's other claim, breach of contract, is **DISMISSED WITH PREJUDICE** because it is an absolute nullity under Louisiana law.

**Background**

St. Charles owned a residential apartment complex in Lake Charles, Louisiana that suffered damage from Hurricane Laura. Record Document 1 at 4-5. About a month later, on September 25, 2020, St. Charles and Elite entered a construction contract for restoration of the complex. Record Document 124-3 at 1. Elite began work almost immediately and submitted its first payment request on October 2, 2020. Record Documents 124-2 at 2, 124-7 at 1. St. Charles paid this request. Record Document 124-2 at 2. Elite later submitted two more payment requests, in December 2020 and February 2021, and St. Charles paid these too. *Id.* Between September 2020 and February 2021, Elite received $1,992,484.00 from St. Charles for its construction services. *Id.*

But, in their construction contract, Elite represented to St. Charles that it was "a [Tennessee] licensed General Contractor and licensed to work in the State of Louisiana by virtue of its relationship with licensed Louisiana contractors, specializing in insurance restoration claims." Record Document 124-3 at 1. The only evidence available, however, establishes that Elite did not have a "relationship with

licensed Louisiana contractors" until long after it had entered the contract with St. Charles and had completed substantial construction work.

Sometime in the middle of February 2021, a representative of Elite contacted Sharpco, a licensed Louisiana contractor, soliciting help on its St. Charles apartment project. Record Document 122-4 at 2. At that time, Sharpco knew only that Elite had performed some mitigation work on the apartment buildings and not that Elite had already done millions of dollars in construction work. *Id.* Elite asked Sharpco to complete insurance and administrative paperwork and to obtain a building permit from the City of Lake Charles. *Id.* On February 24, 2021, Sharpco obtained the building permit and completed the requested insurance and administrative paperwork. *Id.* Sharpco had no further involvement with the project other than execution of a joint venture agreement. *Id.* On March 3, 2021, Sharpco and Elite entered a joint venture agreement that described their respective duties. Record Document 122-14 at 2. Sharpco had a role limited to providing a "contractor's license, permits, and insurance[.]" *Id.*

Meanwhile, as it formalized a relationship with Sharpco, Elite continued its construction on St. Charles's apartment complex. On dates unknown, but sometime before March 4, 2021, Elite performed work that it later documented in three separate invoices. *See* Record Document 124-2 at 3. Elite stated that it performed this work to either repair damage from a subsequent hurricane and ice storm or change roofing products at St. Charles's request. *Id.* Elite did not issue these invoices until after St. Charles terminated their construction contract. *Id.*

The contract between St. Charles and Elite fell apart on March 4, 2021. On that date, a St. Charles representative issued a stop work order to Elite based on its alleged poor workmanship. Record Document 122-13. St. Charles later supplemented that stop work order to identify additional purported defects and Elite's failure to obtain a building permit before it "completed" roofing construction. Record Document 122-15. Eventually, on May 10, 2021, St. Charles terminated its contract with Elite based on these alleged construction defects. Record Document 124-2 at 3.

After the termination, Elite issued three invoices to St. Charles. The first invoice, dated May 13, 2021, demanded $210,874.85 for demolition work, painting, and repairs to water lines. Record Document 124-8 at 3. The itemized invoice specified the work performed and the various costs incurred to perform the work, including equipment fees and housing costs. *Id.* The second invoice, dated May 18, 2021, demanded $39,385.30 for the replacement of roofing shingles after St. Charles chose a different color. *Id.* at 1. Once again, the invoice identified the work performed, and specified the equipment, like dumpsters, needed to do the work. *Id.* The final invoice, dated May 19, 2021, demanded $49,389.02 for replacement of shingles on multiple buildings because the wrong shingle type was used. *Id.* at 2. The invoice detailed the costs for removing the original shingles, adding the new shingles, and the scaffolding needed for the work. *Id.* St. Charles did not pay these invoices, which totaled $299,649.17. Record Document 124-2 at 3.

The alleged construction defects resulted in this lawsuit. St. Charles sued Elite, Sharpco, and Reeds under a variety of theories and causes of action. *See* Record

Document 1 at 13-27. Relevant here, St. Charles asserted two claims against Sharpco. First, St. Charles alleged that Sharpco failed to supervise Elite's work or otherwise engaged in negligent conduct that caused the alleged defects. *Id.* at 16-17. In the alternative, St. Charles alleged that Sharpco committed fraud when it entered the joint venture agreement with Elite. *Id.* at 25-26. St. Charles's causes of action against the other defendants, Elite and Reeds, have been dismissed. Record Documents 70, 101.

In response to St. Charles's lawsuit, Elite filed its own counterclaim. Record Document 12. Elite alleged that St. Charles breached their construction contract when it was improperly terminated. *Id.* at 21-22. According to Elite, St. Charles should have paid its lost overhead, lost profit, and contractual interest. *Id.* at 21. In the alternative, Elite also pleaded a cause of action for unjust enrichment. *Id.* at 22. Elite asserted that St. Charles was unjustly enriched because it refused to pay the three invoices issued in May 2021, totaling $299,649.17, for the work it had already performed. *See id.*

**Analysis**

Sharpco and Elite both moved for summary judgment. Record Documents 122, 124. Federal Rule of Civil Procedure 56(a) requires a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When the burden at trial rests on the movant, the movant must "demonstrate the absence of a genuine issue of material fact." *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.

1994). When the burden at trial will rest on the nonmovant, the movant need not produce evidence to negate the elements of the nonmovant's case; rather, it need only point out the absence of supporting evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The non-movant must then set "forth specific facts showing the existence of a genuine issue concerning every essential component of its case." *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003). This burden requires more than metaphysical doubt, conclusory or unsubstantiated allegations, or a mere scintilla of evidence. *Little*, 37 F.3d at 1075.

## I. Motion for Summary Judgment – Sharpco

Sharpco moved for summary judgment on St. Charles's only remaining claims of negligence and fraud. Record Document 122. First, Sharpco argued that it could not have acted negligently because, prior to its involvement, Elite had already completed its construction activities. *Id.* at 2. Second, Sharpco contended that it could not have defrauded St. Charles because Elite disclosed in their construction contract that it would perform the work pursuant to a "relationship" with a licensed Louisiana contractor. *Id.* This Court need not address either argument because St. Charles failed to defend its claims against summary judgment.

The United States Court of Appeals for the Fifth Circuit has held that "[a] plaintiff abandons claims when it fails to address the claims or oppose a motion challenging those claims." *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 459 (5th Cir. 2022). This district court, like others, dismisses claims for abandonment when a plaintiff fails to defend against a motion for summary

judgment. *See, e.g.*, *Goldstein v. Wood*, No. 23-899, 2026 WL 3270076, at *8 (W.D. La. Oct. 30, 2026) ("[Plaintiffs] failed to defend these claims against summary judgment, and therefore, they are abandoned."); *ZL & Sky LLC v. City of Joshua, Tex.*, No. 22-182, 2024 WL 130754, at *3 (N.D. Tex. Jan. 10, 2024) ("When a plaintiff fails to defend or pursue a claim in response to a motion to dismiss or summary judgment, the claim is deemed abandoned.").

In this case, St. Charles neither responded to nor opposed Sharpco's motion for summary judgment. By failing to defend its claims of negligence and fraud, St. Charles has abandoned them, and both claims are dismissed with prejudice. *See, e.g.*, *Aspan v. Carrington Mortg. Servs., LLC*, No. 23-20545, 2024 WL 4054375, at *5 (5th Cir. Sept. 5, 2024) ("Because [plaintiff] failed to defend her DTPA claim in response to [defendant's] motion for summary judgment, she abandoned it, and the district court did not err in granting summary judgment on that ground."). Because these were the sole remaining causes of action in the original complaint, St. Charles's action is dismissed in its entirety.

## II. Motion for Summary Judgment – Elite

Elite moved for summary judgment on its counterclaim. Record Document 124. According to Elite, no genuine dispute of material fact exists that St. Charles improperly terminated their construction contract and failed to pay for Elite's overhead and lost profits. Record Document 124-1 at 10. St. Charles, in response, argued that the construction contract between them is unenforceable because Elite

was not a licensed contractor in Louisiana. Record Document 127 at 2. St. Charles is correct.

Louisiana made it "unlawful for any person to engage in or continue in this state in the business of contracting, or to acts as a contractor…unless he holds an active license as a contractor[.]" La. Rev. Stat. Ann. § 37:2160(A)(1). "Louisiana courts have long recognized that a contracting agreement entered into without the benefit of a contractor's license is null and void." *Trade-Winds Env't Restoration, Inc. v. Stewart Dev., Ltd. Liab. Co.*, 409 F. App'x 805, 807 (5th Cir. 2011) (collecting cases). That remains true even when the contractor later obtains a license after it first entered into the contract. *Id.* at 807 n.2 (finding a contract null where the contractor "did finally obtain a license about a month before completion of the project[.]"). When the contract is null, the contractor's recovery is limited to "the actual cost of materials, services and labor" under a theory of unjust enrichment. *Trade-Winds Env't Restoration, Inc. v. St. Tammany Park LLC*, 578 F.3d 225, 260 (5th Cir. 2009). The contractor is "not entitled to an allowance for profit and overhead." *Alonzo v. Chifici*, 526 So. 2d 237, 243 (La. Ct. App. 1988).

To start, Elite argued that St. Charles cannot raise this affirmative defense because it was struck as a discovery sanction. Record Document 128 at 2. But that does not matter. The Louisiana Civil Code provides, "[p]ersons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity." La. Civ. Code. art. 7. The licensing requirement for contractors was "enacted to protect an interest vital to the

public order[.]" *St. Tammany Park*, 578 F.3d at 255. And an "absolute nullity may be invoked by any person or may be declared by the court on its own initiative." La. Civ. Code art. 2030.

Here, although struck as an affirmative defense, the Court must raise "on its own initiative" Elite's lack of a Louisiana contractor's license. La. Civ. Code art. 2030. Even though this means St. Charles can "obtain indirectly what it is prohibited from asserting directly[,]" Record Document 128 at 3, the rule prohibiting contractors from operating in Louisiana without a license outweighs that concern. Louisiana's licensing provisions protect its citizens and ensure that "contractors are qualified[.]" *Patriot Disaster Specialist LLC v. Hacker*, No. 22-6016, 2025 WL 2177825, at *4 (W.D. La. July 31, 2025). Elite cannot contravene Louisiana law and public policy with an "illegal" contract, *Alonzo*, 526 So. 2d at 234, through the procedural windfall of a discovery sanction against its opponent.

In the alternative, Elite also argued that St. Charles did not provide any evidence that it in fact lacked a Louisiana license. Record Document 128 at 5. That argument ignores the plain language of Elite's contract with St. Charles. In that contract, Elite admitted that it was "a TN licensed General Contractor[.]" Record Document 124-3 at 1. Elite further disclosed that it was only "licensed to work in the State of Louisiana by virtue of its relationship with licensed Louisiana contractors, specializing in insurance restoration claims." *Id.* But that "relationship" did not exist until months after Elite executed its contract with St. Charles. Elite and St. Charles executed their construction contract on September 25, 2020. Record Document 124-3

at 1. Meanwhile, Elite and Sharpco executed their joint venture agreement on March 3, 2021. Record Document 122-14 at 2. Based on Elite's own contracts, then, the evidence established that Elite did not have a Louisiana contractor's license when it executed the construction contract. Therefore, the construction contract between Elite and St. Charles is an absolute nullity, and Elite is not entitled to overhead and profit as damages for St. Charles's alleged breach of contract.

Even though the contract is null, St. Charles cannot "escape liability for payment of the actual cost of materials, service and labor while reaping the benefits of the renovations." *Alonzo*, 526 So. 2d at 237. Elite included a cause of action for unjust enrichment in its counterclaim and established through an affidavit and invoices the actual cost of its unpaid materials and service. Record Documents 12 at 20, 124-2, 124-8.

In an affidavit, Scot Holloway, the president of Elite, attested that St. Charles did not pay for three invoices that totaled $299,649.17. Record Document 124-2 at 3. Based on this affidavit, it appears that this amount reflects the costs of materials and services, rather than overhead and profit. *Id.* ("[T]he total amount claimed…is three (3) unpaid invoices ($299,649.17), plus overhead and profit for the uncompleted work ($610,012.94), totaling $909,662.11."). The undersigned has reviewed the invoices, which were dated May 13, 2021, May 18, 2021, and May 19, 2021, and finds that they support the cost of Elite's unpaid services. The May 13, 2021 invoice itemized that Elite performed demolition and painting of apartment units and incurred costs for materials, equipment, and housing while its performed the work. Record Document

124-8 at 3. The May 18, 2021 invoice itemized that Elite replaced the roofing shingles on three buildings and incurred costs for equipment, like dumpsters, to do the work. *Id.* at 1. Finally, the May 19, 2021 invoice detailed that Elite replaced the roofing shingles on fourteen buildings and incurred costs for equipment, including scaffolding, needed to perform the work. *Id.* at 2. Because Elite performed this work and incurred these costs on St. Charles's behalf, St. Charles must compensate Elite for its unpaid materials and labor in the amount of $299,649.17.

**Conclusion**

For the foregoing reasons, Sharpco's motion for summary judgment, Record Document 122, is **GRANTED**. All claims of St. Charles against Sharpco are dismissed with prejudice. Furthermore, Elite's motion for summary judgment, Record Document 124, is **GRANTED IN PART**. Elite is entitled to judgment on its claim for unjust enrichment and a total amount of $299,649.17 in damages. Elite's other cause of action for breach of contract is **DISMISSED WITH PREJUDICE**. A judgment consistent with the terms of this memorandum ruling shall issue herewith.

**DONE AND SIGNED** at Shreveport, Louisiana, this 18th day of November, 2026.

ALEXANDER C. VAN HOOK
UNITED STATES DISTRICT JUDGE